# CHRIST. M. DAHNKE

*v.*

# THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed November 1, 1897.*

1. CONTEMPT—*locking judge out of court room is contempt.* Locking a judge out of his court room during an interval between sessions of his court is such a disturbance of the proceedings of the court as will constitute contempt.

2. SAME—*contempt in locking out a judge is not justified by order of county board.* One cannot defend against contempt proceedings instituted to punish him for locking a judge out of his court room, by showing he acted under orders of the county board, which had appointed him as custodian and had assigned the room in question to another judge of the court, and had also assigned a different room to the judge locked out.

3. COURTS—*judges may apportion court rooms among themselves.* Court rooms provided by a county board for the several judges of the circuit and Superior Courts of the county are under the control of the judges of such courts, so far as relates to assignment of the rooms among the several judges.

4. COUNTIES—*limit of Cook county board's power under the constitution.* The power to manage the county affairs of Cook county, conferred by section 7 of article 10 of the constitution upon the board of county commissioners of that county, in no way includes the power to assign court rooms to judges.

5. SAME—*custody of county board and of the sheriff distinguished.* A county court house, merely *as real estate,* is in the care and custody of the county board, which controls the title, but *as a court house* its custody is in the sheriff, as the executive officer of the court, whose custody is really that of the court itself.

6. STATUTES—*particular statute controls general one.* A particular and specific statutory provision will prevail over a general one on the same subject in another statute, and will be treated as an exception thereto.

*Dahnke* v. *People,* 57 Ill. App. 619, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. HENRY V. FREEMAN, Judge, presiding.

This was a proceeding against the plaintiff in error in the Superior Court of Cook county for contempt in interfering with the use of one of the court rooms in the court house of Cook county by Judge Henry V. Freeman, one of the judges of the Superior Court of said county. Notice was given to plaintiff in error of an application for a writ of attachment for criminal contempt, based upon an affidavit showing the facts in regard to such interference. A writ of attachment was issued, and plaintiff in error was arrested. On December 8, 1894, an order of court was entered, showing that the sheriff had brought plaintiff in error into court, and ordering that the attorney for the People should forthwith file interrogatories to be propounded to the plaintiff in error. Such interrogatories were filed, and answers thereto made by the plaintiff in error. Upon filing such answers, the plaintiff in error moved to be discharged as purged of contempt. The court found plaintiff in error guilty of contempt, and overruled the motion for discharge, and fined him $50.00, and ordered that he stand committed to the custody of the sheriff until the fine was paid. The judgment imposing this fine was taken by writ of error to the Appellate Court, and there affirmed. The present writ of error was then sued out from this court for the purpose of reviewing such judgment of affirmance entered by the Appellate Court.

The facts, as they appear from the affidavits filed and the answers to the interrogatories, are substantially as follows:

It appears that, since 1891, the board of county commissioners of Cook county has assumed control of the court house in that county and appointed a custodian therefor. The plaintiff in error was, at the time of the contempt charged against him, holding the position of such custodian. There is a number of court rooms in the court house in said county, prepared for the use of the judges of the Superior and circuit courts of Cook county,

who are of equal dignity, and have the same jurisdiction. There are about twenty-three of such judges, who hold court in said court rooms; and, in view of the number of judges and the limited number of court rooms, it has happened that there is not a sufficient number of court rooms in the court house to accommodate said judges with separate court rooms. Hence, there are times when some one or more of said judges are without court rooms in said court house.

It appears, that the county board have assumed to assign the court rooms in the court house to the various judges of said courts. On September 17, 1894, Judge McConnell of the circuit court, who had been occupying court room No. 421, left that room for the purpose of holding criminal court in the Criminal Court Building, which is a separate building from that in which the civil courts are held. Upon such vacation of the room by Judge McConnell, Judge Freeman of the Superior Court of Cook county took possession of said room 421, although the same had not been assigned to him by the county board, and occupied it for the purpose of holding his court therein, and continued so to occupy it until November 5, 1894, when the occurrences hereinafter mentioned took place. In the meantime, and on October 15, 1894, the county board assigned said room 421 to Judge Windes of the circuit court, room 207 to Judge Hanecy of the circuit court, and room 327 to Judge Freeman of the Superior Court to be used by him temporarily, until another judge, who was holding criminal court, should return from the Criminal Court Building to take up his civil docket. Before the order of October 15 was entered by the county board, and on or about October 1, 1894, Judge McConnell resigned his position as judge of the circuit court.

On November 5, 1894, Judge Freeman was holding court in court room No. 421, and hearing a chancery

cause therein. On the evening of that day, by order entered of record, he adjourned said court until ten o'clock A. M. on November 7, 1894; November 6 having been the day of the general election. When court adjourned, the files in the cause on hearing, and in other causes pending in said court, as well as the memoranda and papers of the judge, were in said court room No. 421. In the interval between the adjournment of the court on the evening of November 5 and the hour of ten o'clock on the morning of November 7, the plaintiff in error, acting under the directions of the county board, changed the locks on the doors of said court room 421; and on the morning of November 7 refused to permit Judge Freeman, and the sheriff and his bailiffs attending the court, and the attorneys, parties and witnesses, interested in the cause on hearing, to enter said court room. By this conduct the judge, and the officers of his court, and the witnesses, attorneys and parties, interested in the cause on hearing, although in attendance and ready to proceed with such cause, were unable to gain admission to the court room. The plaintiff in error, acting under such order of the county board, declared that the session of said court should not be held in the said room. The plaintiff in error, as custodian as aforesaid, had been directed by the county board to remove the property of Judge Freeman from room 421, and turn over said room 421 to another judge. In view of this conduct of plaintiff in error as such custodian, the bailiffs in attendance upon Judge Freeman's court threatened to break into said court room; and thereupon the plaintiff in error unlocked the doors thereof, and allowed such bailiffs to take possession, until he could report to the county board, and ask further instructions.

ROBERT S. ILES, for plaintiff in error.

S. P. SHOPE, for the People.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The first question, which arises in this case, is this: was the conduct of the plaintiff in error in locking the door of the court room during the period of adjournment, and refusing to allow the judge of the court, and his officers, and the parties to the suit on hearing before him, to enter the court room, a contempt?

In *Stuart* v. *People*, 3 Scam. 395, we held, that the power was inherent in every court of justice to defend itself when attacked, just as much as the individual man has a right to defend himself for his own preservation; and we also there held, that in the power to punish for contempt are necessarily "included all acts calculated to impede, embarrass or obstruct the court in the administration of justice. Such acts will be considered as done in the presence of the court." The doctrine of the *Stuart case* was re-affirmed in *People* v. *Wilson*, 64 Ill. 195. The conduct of plaintiff in error was certainly such as was calculated to obstruct the court in the administration of justice. Rapalje in his work on Contempt (at sec. 22) classifies, among contempts which are direct, those which are committed within the presence of the court while in session, "or so near to the court as to interrupt its proceedings." It is true, that the acts of the plaintiff in error were not performed while the court was actually in session, but, having been performed during the brief adjournment of the court from one session to another, and having had the effect of preventing the judge of the court from gaining access to his court room, they may be regarded as being so near to the court as to interrupt its proceedings. "Courts of justice have an inherent power to punish all persons for contempt of their rules and orders, for disobedience of their process, and for disturbing them in their proceedings." (3 Am. & Eng. Ency. of Law, p. 780). There can be no doubt, that the conduct of plaintiff in error here disturbed and interfered with the court

in its proceedings, and while it was engaged in the administration of justice. Contempt of court is a despising of the authority, justice or dignity of the court. He is guilty of such contempt, whose conduct is such as "tends to bring the authority and administration of the law into disrespect or disregard, or to interfere with, or prejudice parties litigant, or their witnesses during the litigation." (Oswald on Contempt of Court, pp. 3, 4). "Any conduct, which is calculated to interfere with the proceedings by assaulting litigants or witnesses within the precincts of the court, or preventing or hindering, or endeavoring to prevent or hinder them in their access to the court or otherwise, is a contempt." (Ibid. p. 27). It has been said, that the power of the court in the matter of contempt cannot be defined within any limits, and that the primary question in all cases of alleged contempt is, "whether there has or has not been an interference or an attempt to interfere with the due administration of justice." (Ibid. p. 70). Applying the definitions of contempt as thus laid down to the facts of this case, we are of the opinion, that there was here a contempt of court, which the judge was justified in punishing, if the facts hereinafter set forth do not constitute a sufficient excuse or justification for the conduct of plaintiff in error.

*Second*—It is claimed, that the county board had a right to assign the different court rooms in the court house to the different judges of the circuit and Superior Courts of Cook county; that each one of such judges was bound to occupy the particular court room so assigned to him; that room 421, though in the actual occupancy of Judge Freeman, had, while he was so occupying it, been assigned to another judge; that Judge Freeman had been assigned to occupy court room 327; that, therefore, the county board had the right and power to order plaintiff in error, as their custodian, to remove Judge Freeman's property from room 421 to room 327, and to prevent his access to room 421; and that, inasmuch as plaintiff in error was

merely acting under the orders of the county board, he was justified in doing what he did.

We know of no law or statute, and have been referred to none, which authorizes the board of county commissioners of Cook county to assign the court rooms in the court house in that county to particular judges. Section 26 of the act of March 31, 1874, "to revise the law in relation to counties" provides as follows: "It shall be the duty of the county board of each county: *First*—To erect or otherwise provide when necessary, and the finances of the county will justify it, and keep in repair, a suitable court house, jail, and other necessary county buildings, and to provide proper rooms and offices for the accommodation of the several courts of record of the county, and for the county board, county clerk, county treasurer, recorder, sheriff, and the clerks of said courts, and to provide suitable furniture therefor." (1 Starr & Curtis' Stat. —2d ed.—p. 1089). Section 4 of the act of February 16, 1874, "to revise the law in relation to circuit courts and the Superior Court of Cook county," provides as follows: "If there is no court house in the county, or if from any cause the court house is unfit for the holding of court therein, the proper authorities of the county may temporarily provide another place at the county seat for the holding of court, or the court, by order entered upon its records, may adjourn to a suitable place at such county seat, and the place so provided, or to which such adjournment is made, shall, during the time the court is so held thereat, be held to be the court house of such county for all judicial purposes connected with such court." (Ibid. p. 1157). Under these provisions of the statute it is the duty of the county board to erect and keep in repair a suitable court house, and to provide rooms therein for the accommodation of the several courts of record of the county. When the board has provided rooms for the accommodation of the courts, the rooms so provided are then in the possession and under the control of the courts

and their officers. If there is a number of court rooms in any court house, the duty of the board is discharged when it turns over such court rooms to the judges of the courts. It rests with the judges of the courts to arrange among themselves, how they will occupy the several court rooms thus provided for them by the county board. The county board has no right to dictate to the judges as to what particular room each judge shall occupy. To make the judges of our courts depend upon a legislative or political body for the rooms, in which they shall hold their sessions, in the manner indicated in this record, would be to destroy the dignity and independence of the judiciary. A county board, having such a power of assignment, would be tempted to assign the best court rooms to its favorites among the judges, and would thus be enabled to put the judiciary under obligations to themselves. The judiciary should be free from obstruction by county boards; it should be independent in all matters relating to the execution of judicial functions. There is danger, that such independence will be sacrificed, if the judges are not allowed free access to their court rooms and control over the same during the sessions of the court, and during its necessary seasons of adjournment.

Whenever it happens that there are not rooms enough to accommodate all the judges, then such a state of things exists as is described in the following words of the statute above quoted: "If there is no court house in the county, or if from any cause the court house is unfit for the holding of court therein." It is, then, the duty of the county board to provide another place or places at the county seat for the holding of court by the judges, who are thus without suitable court rooms. Section 7 of article 10 of the constitution of 1870 provides that, "the county affairs of Cook county shall be managed by a board of commissioners of fifteen persons, ten of whom shall be elected from the city of Chicago, and five from towns outside of said city, in such manner as may be pro-

vided by law." The power to manage the county affairs of Cook county, as thus conferred by the constitution, in no way includes the power to assign court rooms to the different judges of the courts of record in such manner as is claimed in this case. The power to so manage is such power as is provided by law, and, therefore, such power as is specified, so far as the present subject is concerned, in the statutes already quoted.

Reference, however, is made by counsel for plaintiff in error to sections 24 and 25 of chapter 34 of the Revised Statutes in relation to counties. Said section 24 provides as follows: "Each county shall have power: *First*—To purchase and hold the real and personal estate necessary for the uses of the county, and to purchase and hold, for the benefit of the county, real estate sold by virtue of judicial proceedings in which the county is plaintiff. *Second*—To sell and convey or lease any real or personal estate owned by the county. *Third*—To make all contracts and do all other acts in relation to the property and concerns of the county, necessary to the exercise of its corporate powers." (1 Starr & Curtis' Stat.—2d ed.— p. 1085). The said section 25 provides as follows: "The county boards of the several counties shall have power: *First*—To take and have the care and custody of all the real and personal estate owned by the county. *Second*— To manage the county funds and county business, except as otherwise specifically provided." (Ibid. p. 1086). It is contended on behalf of plaintiff in error, that, inasmuch as under sections 24 and 25 the county board has the power to purchase and hold the real and personal estate of the county, and to take and have the care and custody of all such real and personal estate, it, therefore, has the right to have the care and custody of the court house and all the court rooms therein. But section 14 of chapter 125 of the Revised Statutes in relation to sheriffs provides, that the sheriff "shall have the custody and care of the court house and jail of his county, except as is

otherwise provided." (3 Starr & Curtis' Stat.—2d ed.—
p. 3768). The act in regard to counties is general in its
terms, and provides for the care and custody by the coun-
ties of all the real estate belonging to the county. The
act, however, in regard to sheriffs specifically provides,
that the sheriff shall have the care and custody of the
court house. The two acts, the one in regard to coun-
ties, and the other in regard to sheriffs, were passed at
the same session of the legislature in 1874. It is a well
settled rule of construction, that, where there are two
provisions, one of which is general and designed to apply
to cases generally, and another is particular and relating
only to one subject, the particular provision must prevail
and must be treated as an exception to the general pro-
vision. (*Chicago and Northwestern Railway Co.* v. *City of Chi-
cago*, 148 Ill. 141; *People* v. *Rose*, 166 id. 422). Hence it would
seem to follow, that, while the county board is entitled
to the general care and custody over the ownership of the
real estate belonging to the county so far as to hold the
title thereto, and preserve the evidences of title, and so
far as it is necessary to erect and keep in repair the build-
ings thereon, yet, after the particular court rooms in a
court house have been provided for the judges, the pos-
session thereof is in the hands and under the control of
the courts themselves, and the care and custody thereof
rightfully belong to the sheriff as the executive officer of
the courts. If the general provision in the act in regard
to counties entitles the board of county commissioners
to have the custody and care of the court house, then it
cannot be otherwise construed than as giving the county
board the power to have the care and custody of the jail,
because section 14 of the act in regard to sheriffs couples
the custody and care of the court house with the custody
and care of the jail. One of the common law powers of
the sheriff is, that he shall be custodian of the county
jail. (22 Am. & Eng. Ency. of Law, p. 525). The consti-
tution of this State provides for the election of sheriffs.

(Art. 10, sec. 8). Sheriffs, as elected under the constitution, have the same powers with which they were clothed at common law. Murfree, in his work on Sheriffs, (sec. 42, chap. 2,) says: "The very name and office of sheriff imply the possession by that functionary of all the powers, and the obligation to perform all the duties of a common law sheriff, except so far as those powers and duties may have been modified by State constitutions or constitutional statutes." The same author also says: "When the office of sheriff is a constitutional office in any State, recognized and designated *eo nomine* by the constitution as a part of the machinery of the State government, the sheriff, *ex vi termini*, must possess, in that State, all the substantial powers appertaining to the office by common law. It is competent for the State legislature to impose upon him new duties growing out of public policy or convenience, but it cannot strip him of his time-honored and common law functions, and devolve them upon incumbents of other offices, created by legislative authority." (Ibid. sec. 41). It has accordingly been held, that the legislature cannot transfer to other officers elected by the board of supervisors the power of the sheriff to have the custody and control of the jail and the prisoners therein, when the constitution provides for the election of sheriffs without designating what their powers shall be. (*State* v. *Brunst*, 26 Wis. 412; *People* v. *Keeler*, 29 Hun, 175). It being true, therefore, that the general provision in the act in regard to counties, giving the care and custody of all the real estate of the county to the county board, cannot have the effect of transferring to that board the care and custody of the jail, it must also appear to be true, that it could not have the effect of transferring to the county board the care and custody of the court house.

This conclusion receives endorsement from several other considerations. In the first place, section 38 of chapter 27, in regard to "counties and county commissioners' courts," of the act of March 3, 1845, provided as

follows: "The county commissioners of said counties shall have the care and custody of said court houses." (Rev. Stat. 1845, p. 135.) Section 7 of the act of March 3, 1845, in regard to "sheriffs and coroners" also provided as follows: "It shall be the duty of the sheriff of each county to attend all circuit courts and courts of county commissioners in his county at the terms and sessions of said courts; and he shall have the custody and care of the court house and jail." (Rev. Stat. 1845, p. 515.) These two statutes of 1845, passed on the same day, would seem to conflict with each other, as one gives to the county commissioners the care and custody of the court house, while the other gives to the sheriff the care and custody of the court house and jail. We need not stop to advance any theory for the purpose of reconciling these two statutes of 1845. It is sufficient to say, that, in 1874, when the legislature adopted a new revision of the statutes, it left out that provision of the act of March 3, 1845, in relation to counties, which specifically gave the care of the court house to the county commissioners, and merely provided in general terms, that the county boards should have the care and custody of all the real estate owned by the county without specifically mentioning court houses. At the same time, while it adopted this general provision in regard to counties, it adopted the specific provision, which gave the custody of the court house to the sheriff.

In the second place, section 24 of the act in regard to sheriffs provides as follows: "When the sheriff goes out of office, he shall deliver to his successor all writs, process, papers and property attached or levied upon, except such as he is authorized by law to retain, and also the possession of the court house and jail of his county, and shall take from his successor a receipt," etc. (3 Starr & Cur. Stat.—2d ed.—p. 3770). Here is a provision, which directs the sheriff specifically when he goes out of office to deliver the possession of the court house to his successor. No other inference is possible than that, during

his term of office, he was to have the possession of that which, at the close of such term, he was to deliver over to his successor. If, therefore, the sheriff is entitled to hold possession of the court house, it would seem to follow that the county board has no right to such possession, except in the manner already specified.

We have held that "the county board can exercise such powers only as are expressly given by law, or such as arise by necessary implication from the powers granted, or are indispensable to carry into effect the objects and purposes of the creation of the municipal corporation." (*County of Cook* v. *Gilbert*, 146 Ill. 268.) Hence, we are inclined to concur with the view expressed by Judge Freeman, in deciding this case in the court below, as follows: "As real estate simply, the court house is in the care and custody of the county board. As a court house, it is in the custody and care of the sheriff. As real estate, the county board controls the title, and keeps the building and its furniture in repair. As a court house, the sheriff, who is himself an officer of court, guards and cares for it. Should the building cease to be a court house, it would revert to the care and custody of the county board like the other real estate.  *  *  *  The custody of the court house by the sheriff is the custody of an officer of the courts, who is subject to their control. In other words, it is the custody of the courts themselves. The sheriff himself has no power to control the use of the court rooms by the courts or judges thereof. His custody and care cannot be construed to include the power of dictating to the courts what special court rooms they shall occupy. This matter rests with the courts themselves, as a matter of inherent power, not with the sheriff even, and certainly not with the county board."

The same doctrine is also well expressed by Mr. Justice SHEPARD of the Appellate Court, in deciding this case, in the following words: "The custody and control, which the county board is entitled to exercise, under the

authority of the constitution and the statutes, are such as attach to and flow from the ownership of the court house by the county; those of the sheriff are such as attach to and flow from the inherent powers and duties of his office at common law, and as recognized by the constitution and declared by the statutes, as the attendant upon the court, and as the court's executive officer." (*Dahnke* v. *People*, 57 Ill. App. 619).

For the reasons herein stated, the judgments of the Appellate Court and of the Superior Court of Cook county are affirmed.