**In re APPOINTMENT of the CLERK OF the COURT OF APPEALS.**

Court of Appeals of Kentucky.

Jan. 22, 1957.

## PER CURIAM.

An obstruction to the administration of justice is threatened in Kentucky by a sequence of events involving the occupancy of the office of Clerk of the Court of Appeals, and it must be resolved quickly and finally in order that chaos shall not prevail with the result that the functioning of this Court be impaired. On the surface it appears to be a fight over patronage, but it is far more important than that because it involves the very vital question of whether one branch of government may impair the exercise of rightful powers of another.

The death of the beloved Clerk of this Court, the Hon. Charles K. O'Connell, on January 10, 1957, created a vacancy in the office and the Court, by its order of January 14, 1957, appointed Miss Doris Owens, Deputy Clerk in the office for more than twenty years, Clerk of the Court to fill the vacancy. The power of the Court

to do this is conceded. However, it is contended by the Executive Branch of the State Government that the power to fill the vacancy until the next election really belongs to the Governor whenever he is ready to act, and that, consequently, the Court's appointment of Miss Owens was effective only until the Governor made his appointment. All efforts to settle the question by negotiation were unavailing because the Constitution itself was involved.

On January 17, 1957, after receiving an inconclusive opinion from the Attorney General, the Governor commissioned Mr. Walter Ferguson, Clerk of the Court of Appeals, and that estimable gentleman took the oath of office on the next day. Confronted with the dilemma of whether the Governor's appointee or the Court's appointee is the legal occupant of the office, the Commissioner of Finance publicly announced for his own financial protection, according to the press, that he would pay neither until ordered to do so by some court. The problem thus developing peculiarly pertains to the functioning of this Court, the highest court in the Commonwealth, and to no other, and we shall deal with it directly. See discussion of original jurisdiction of this Court in Commonwealth ex rel. Ward v. Harrington, 266 Ky. 41, 98 S.W.2d 53. See, also, an ex parte opinion rendered by this Court in 1881 styled, Opinion of the Judges of the Court of Appeals on the Subject of the Power of the Governor to fill Vacancies by Appointment, 79 Ky. 621, 3 Ky.Law Rep. 2–11.

■ It is the prime duty of this Court to assure to the best of its ability the orderly and effective administration of justice in this jurisdiction, and it has the inherent power to do what is reasonably necessary to attain that goal. As stated by the Montana Supreme Court in State ex rel. Hillis v. Sullivan, 48 Mont. 320, 137 P. 392, 395:

"The very conception of inherent power [in the courts] carries with it the implication that its use is for occasions not provided for by established methods. * * * When, however, these [established] methods fail and the court shall determine that by observing them the assistance necessary for the due and effective exercise of its own functions cannot be had, or when an emergency arises which the established methods cannot or do not instantly meet, then and not until then does the occasion arise for the exercise of the inherent power."

■■ For various instances where the inherent power of the courts was invoked, see Mitcheson's Adm'r v. Foster, etc., 60 Ky. 324; Louisville Industrial School of Reform v. City of Louisville, 88 Ky. 584, 11 S.W. 603; Burton v. Mayer, 274 Ky. 263, 118 S.W.2d 547; In re Janitor of Supreme Court, 1879, 35 Wis. 410; Noble County Council v. State ex rel. Fifer, 1955, 234 Ind. 172, 125 N.E.2d 709; Dahnke v. People, 168 Ill. 102, 48 N.E. 137, 39 L.R.A. 197; State ex rel. Kitzmeyer v. Davis, 26 Nev. 373, 68 P. 689; Leahey v. Farrell, 362 Pa. 52, 66 A.2d 577. And, indeed, a court "may; in appropriate cases, make ex parte orders without formally instituting an action to secure the desired relief." In re Court Room and Offices of Fifth Branch Circuit Court, Milwaukee County, 148 Wis. 109, 134 N.W. 490. An emergency has been created in this jurisdiction by the act and intended act of the Executive Department which cannot be promptly relieved by the ordinary routine of litigation, and fully justifies direct and forthright action by this Court, now.

The act of the Governor in commissioning a Court Clerk of his own choosing to replace the Clerk appointed by this Court, and the understandable decision of the Commissioner of Finance in declaring that he will refuse to pay a salary to either Clerk, have not affected the functioning of

the Executive Department, but they definitely have impaired and threaten to impair the functioning of the Judicial Department. The situation thus created makes clear the wisdom of our Constitution which prescribes in Section 27:

"The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

And admonishes in Section 28:

"No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or . permitted."

When the separation of the powers of government is appreciated and observed, when restraint and cooperation are practiced, democracy flourishes and dictatorship is impossible. Ever since the landmark opinion of Chief Justice Marshall in 1803 in Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60, when a conflict occurs between or among these three great branches of government, it has historically been the duty of the highest court in the jurisdiction to resolve the constitutional issue. The judges of such a court, whether appointed or elected, are the persons in whom the people have placed the power and the duty to decide the issues. Just as the Supreme Court of the United States determines such matters, so must this Court determine them in Kentucky.

The seven judges of this Court were elected by the people of Kentucky to head the judicial branch of their government. They have taken an oath to support the Constitution, and they would be quite remiss in the performance of their duties if they failed to do so. Faced with the necessity of having a Clerk in office at the opening of the Winter Term of the Court on January 14, 1957, we seven judges examined the Constitution and unanimously decided that we had the constitutional power to appoint the Clerk, and it is conceded that we had the power to make such an appointment at that time. A discussion of the pertinent sections of the Constitution will disclose that it would take quite a bit of gymnosophistry to reach the conclusion that the Clerk appointed by the Court must be replaced by a Clerk appointed by the Executive Department before the electorate has an opportunity to fill the office at the general election next November.

Section 121 of the Constitution stipulates that, "No person shall be eligible to the office of Clerk of the Court of Appeals unless he is a citizen of Kentucky * * * and have a certificate from a Judge of the Court of Appeals that he has been examined by him, or by the Clerk of his Court under his supervision, and that he is qualified for the office." No effort was made to qualify the appointee of the Executive Department in compliance with this provision. Section 124 empowers the Court of Appeals to remove the Clerks of all Courts from office "upon information and good cause shown." And the most important pertinent provision of the Constitution in this controversy, Section 122, declares:

"Should a vacancy occur in the office of the Clerk of the Court of Appeals, or should the Clerk be under charges, the Court of Appeals shall have power to appoint a Clerk until the vacancy be filled as provided in this Constitution, or until the Clerk be acquitted."

The whole tenor of these provisions of the Constitution indicates quite clearly that it was the intention of the Constitutional Convention to give the Court considerable power over its Clerk and to recognize the fundamental doctrine of the separation of powers of government (Sections 27 and

28, heretofore quoted) by specifically directing the Court to fill any vacancy in the office of the Clerk until the electorate has the opportunity to fill it at the next proper election. The events of the past week confirm the wisdom of this conclusion.

However, it is argued that the words of Section 122 that "the Court of Appeals shall have power to appoint a Clerk until the vacancy be filled as provided in this Constitution" mean that the Court shall have the power only until the Executive Department exercises its power of appointment under Section 152 of the Constitution. The latter section provides in part:

> "*Except as otherwise provided in this Constitution,* vacancies in all elective offices shall be filled by election or appointment * * *. Vacancies in all offices for the State at large * * shall be filled by appointment of the Governor; all other appointments shall be made as may be prescribed by law."

and goes on to fix the time when elections shall be held for the unexpired terms of offices. Under Section 152 vacancies on this Court and on the Circuit Bench are filled by appointment of the Governor until the next proper election.

■ When read together, Sections 122 and 152 obviously mean that a vacancy in the office of Clerk of the Court of Appeals shall be filled by appointment of the Court until the election for the unexpired term as prescribed by Section 152. Section 122 is a specific provision and Section 152 expressly excepts it. In fact, no commission is required from the Governor for the Clerk appointed by the Court (Section 76 of the Constitution) as is required when the Governor has the power to appoint.

Since the founding of this Commonwealth, the judges of the Court of Appeals have always had the authority to fill a vacancy in the office of the Clerk. Ky. Const., (1792) Art. VI, Sec. 5; Ky.Const., (1799) Art. IV, Sec. 10; Ky.Const., (1850)

Art. IV, Sec. 13. This is made especially clear in the 1850 Constitution wherein the authority of the Governor was limited to the right to call an election when the vacancy exceeded one year. The Governor's right to fill vacancies in other State elective offices was embodied in Art. VIII, Sec. 26, of that Constitution, and the office of Clerk of the Court of Appeals was omitted. The similarity of the principles embodied in the first three Constitutions, especially the third one, is striking. The separation of authority on this point has been embodied in our present Constitution in slightly different language.

■ The doctrine of the separation of governmental powers, Sections 27 and 28, runs like a golden thread throughout the fabric of our government. For example, the General Assembly is the sole judge of the election and qualifications of its members, Section 38, it alone can expel a member, Section 39, and vacancies in the General Assembly can be filled only by an election by the people, Section 152. The Circuit Courts are authorized by statute to fill vacancies in the office of Circuit Court Clerks by court appointment. KRS 63.220 (2). And it is common knowledge that the General Assembly selects its employees, so does this Court, and so does the Executive Branch.

"Each to its own" is the law of the Constitution which the Executive Branch and the Judiciary each must obey. When constitutional prerogatives are as clearly defined as they are here, integrity requires that encroachment be firmly resisted and a compromise, which events have demonstrated violates the Constitution, be as firmly rejected. It is our unanimous opinion that this Court alone has the constitutional power of appointment to fill vacancies in the office of the Clerk of the Court of Appeals until the electorate has an opportunity to elect a candidate for the unexpired term at a proper election. In the light of the foregoing and in order to assure the orderly administration of justice

in this jurisdiction, necessary orders will be made as required.

### Order

The Clerk of the Court of Appeals, Miss Doris Owens, is hereby directed to transcribe in full this Opinion and Order on the Order Book of this Court, this 22 day of January, 1957.

It is the view of Judge CAMMACK that the Court has the *duty* to fill a vacancy in the office of the Clerk of the Court of Appeals as provided in the Constitution, and he concurs in the foregoing Order to that effect.