363 N.E.2d 218 (1977)
LAKE COUNTY COUNCIL, Petitioner,
v.
Honorable Lorenzo ARREDONDO and Lake County Court, Division II and Honorable Orval W. Anderson and Lake County Court, Division III, Respondents.
No. 477S282.
Supreme Court of Indiana.
May 18, 1977.
Dissenting Opinion May 20, 1977.
*219 James L. Weiser, Highland, for petitioner.
Bernard M. Tetek, Gary, for respondent Hon. Lorenzo Arredondo, Judge, & Lake County Court, Division II.
Lowell E. Enslen, McHie, Enslen & Moran, Hammond, for respondent Hon. Orval W. Anderson, Judge, & Lake County Court, Division III.
PRENTICE, Justice.
This is an expedited review of the opinion and decree of the Lake County Courts, Divisions II and III, Jack A. King, Special Judge presiding. The appeal has been submitted, without formal briefs, upon objections of both the petitioner and the respondents, citations and oral arguments presented to this Court on May 2, 1977.
On January 3, 1977, both respondent courts entered orders by which budgets for the calendar year 1977 were mandated of the petitioner, Lake County Council. The Council filed petitions for trials upon the merits, which said petitions were consolidated and heard April 12th and 13th by the Special Judge appointed by this Court; and said petitions were determined by the opinion and decree entered April 18, 1977, and now before us for review.
Said decree, in part, granted certain of the relief sought and certain modified relief and in part denied relief. In all, the decree reduced the sums mandated by Division II from $228,376.00 to $176,149.00 and the sums mandated by Division III from $221,376.00 to $173,493.00.
The issues presented by the objections of the parties are as follows:
(1) Were the denials of relief and the modifications proper, i.e. was there sufficient evidence to sustain findings that the sums mandated by the original orders, as modified by the decree, were reasonably necessary for the operation of the courts?
(2) Did the court err in admitting evidence regarding events that occurred subsequent to the entry of the mandate orders of January 3, 1977?
(3) May the County Courts appoint commissioners?

ISSUE I
This issue is governed by appellate rules applicable generally to the legality of judgments as determined by the evidence. In such cases, we do not inject ourselves to reevaluate the evidence. Rather, we will affirm if there was substantial evidence of probative value to sustain the decision of the trial court. Baum v. State (1976), Ind., 345 N.E.2d 831 and cases there cited. Absent such evidence, or in the event of evidence being without conflict and leading to but one reasonable conclusion which is contrary to the decision of the trial court, such decision is contrary to law. State ex rel. Flaugher v. Rogers (1948), 226 Ind. 32, 77 N.E.2d 594.
*220 It was acknowledged in oral arguments that there was probative evidence presented in support of the reasonable necessity of each item mandated and against which no relief or only modified relief was granted; and we cannot say that the decision was, in any regard, contrary to law as permitting the mandate of funds for any item or service not reasonably necessary for the operation of the respondent courts.

ISSUE II
The petitioner assigned error by the trial court in admitting evidence of certain events that occurred subsequent to the date of mandate, its position being that the propriety of the mandate would have to be determined prospectively, as of its date, and not by hindsight. We agree with this position in principle, but we do not agree that the court determining the petition for relief could not hear such evidence. Its determination is required to rest upon relevant evidence, and to the extent practicable, irrelevant evidence should be excluded. Relevance, however, is the logical tendency of evidence to prove a material fact. Walker v. State (1976), Ind., 349 N.E.2d 161. The exact nature of the evidence complained of was not disclosed. That it was of occurrences subsequent to the date of the mandate, however, did not necessarily render it irrelevant.

ISSUE III
One of the items in each budget mandated was a salary allowance for a "court commissioner." In granting relief as to such item, the trial judge responded:
"There is no statutory provision specifically authorizing the appointment of a commissioner by a county court. I.C. 1971, XX-X-XX-X et seq. contains no reference to county courts. The statute by which these courts were created, I.C. 1971, XX-XX-X-X-X, authorizes a county court judge to appoint `such other employees as are necessary.' However, the same statute prohibits the appointment of a judge pro-tem on any permanent basis, I.C. 1971, 33-10.5-5-1, and it is uncontroverted that these commissioners are to be utilized at least in part for that very purpose. In addition, I.C. 1971, XX-X-XX-X was in effect when the County Court Law was enacted in 1975. Had the General Assembly intended to authorize the appointment of commissioners by county court judges it could have done so with relative ease. The commissioners contemplated by the judges in this litigation are intended to perform judicial functions. If that is necessary the legislature should create more judges or specifically authorize county court commissioners."
On review, the respondents acknowledge the absence of statutory authority, other than as might be inferentially included in the provisions for "such other employees as are necessary * * *" in Ind. Code (Burns 1975) 33-10.5-8-2; but they assert the inherent authority of courts to do all things that are reasonably necessary for the administration of justice within the scope of their jurisdiction, which, of course, includes the employment of necessary personnel. Additionally, undisputed evidence was present indicating that without such commissioners, said courts will be unable to adjudicate the volume of cases to come before them with acceptable dispatch.
In none of their cited authorities,[1] do we find precedent for a court to appoint a *221 master commissioner (30A C.J.S. Equity § 515) or referee (76 C.J.S. References § 3) of the nature here contemplated, i.e. one who in a continuing fashion would function, in essence, as the judge  although subject to the judge's subsequent approval.
Without question, the county courts are vested with the inherent authority as above stated.
"* * * The functions of the City Court of the City of Hammond are as truly judicial in character (although limited in scope) as that of any other court in the State of Indiana. In our view, in order for it to operate independently, freely and with absolute integrity, it is as important for it, if not more so than a higher court, not to be hampered and interfered with for lack of funds withheld by a local legislative body. The constitutional `umbrella of protection' covers all courts in Indiana in the performance of their judicial functions  be they small or be they large. We can see no reason for any distinction." Carlson v. State ex rel. Stodola (1966), 247 Ind. 631, 636, 220 N.E.2d 532, 535.
"* * * The legislature, under the Constitution, may create other courts than those named in the Constitution. But the Constitution alone bestows judicial power and all judicial power comes from the Constitution and is vested by it in courts and judges who can no more be interfered with by the legislature than a court or a judge created by the Constitution itself." State ex rel. Kostas v. Johnson (1946), 224 Ind. 540, 550, 551, 69 N.E.2d 592, 596.
We find no authority for any court to propagate, and although the proposed action of the respondents would not create new county courts per se, such appointments would come frightfully close thereto. If a judge may create such an office when, in his opinion, the volume of business requires, he may create another  and another, until he himself would become first an administrator and ultimately but a rubber stamp, and his entire judicial function would become vested in his commissioners. Such a result is obviously diametrically opposed to the best interests of the judiciary and of the state. Section 1 of Article VII of our State Constitution provides for the vesting of judicial power. Other than as thereby created, courts may be created only by the Legislature. Unquestionably, the inherent power of this Court includes the power to provide for master commissioners or referees, as was done by Small Claims Rule 14, where such action is necessary to prevent a breakdown in the administration of justice occasioned by legislative oversight or indifference. However, the exercise of such power has and should be but sparingly used. "The very conception of inherent power (in the courts) carries with it the implication that its use is for occasions not provided for by established methods." In re Appointment of Clerk of Court of Appeals of Kentucky (1957), 297 S.W.2d 764, 765.
There is no indication that the needs of Lake County for county courts have been so overlooked or ignored. They may become overburdened, as cautioned by respondents, by the elimination of the Justice of the Peace Courts. However, the Legislature has recently established a mechanism by which the needs of the judiciary may be recognized, by the creation of the Division of State Court Administration, within the office of the Chief Justice. Ind. Code (Burns 1975) 33-2.1-7-1. Among the duties of the division are the collection and assimilation of information pertinent to deciding the need for additional courts. Pending the creation of additional courts, when required, the assignment of judges on a temporary basis has been provided for. This procedure is of but recent origin and has not yet come into fruition. A judge, who deems himself to be overburdened and unable to meet the judicial demands of his court should apply to this division for relief.
*222 The judgment of the trial court is affirmed.
And the mandate order as modified by the decree of April 18, 1977, now having been reviewed by this Court, as provided by Trial Rule 60.5(B), the same is now in full force and effect; and
The Clerk of this Court is directed to certify this opinion forthwith to the court below, without awaiting waivers or expiration of the time allowed for the filing of a rehearing petition and simultaneously to send uncertified copies to the attorneys of record.
GIVAN, C.J., and DE BRULER, J., concur.
HUNTER, J., dissents  opinion to follow.
PIVARNIK, J., not participating.
HUNTER, Justice, dissenting.
My dissent must of necessity be based on the inherent superintendency powers of the Indiana Supreme Court, which powers should always be used sparingly. However, it occurs to me that requesting court commissioners for Divisions II and III of the Lake County Courts is necessary  the necessity being demonstrated by undisputed evidence, as recognized in the majority opinion, that the caseload burden could not be met with acceptable dispatch because of the volume of cases presently in such divisions; and as of July 1 of this year, two other courts will be phased out. It is estimated that by reason of the phase-outs, there will be 14,000 additional cases which will have to be assumed by Divisions II and III, bringing the total caseload of these two divisions to approximately 35,000 for the next ensuing fiscal year, all of which will be in their civil, plenary, possessory and criminal dockets.
It is not necessary for this Court to recite its inherent power to order the temporary and permanent creation of officers to aid the courts in their duty to exercise the administration of justice.
I believe this Court should recognize its obligations and duties for furthering the administration of justice in Lake County. I am not impressed with the statement expressed in the majority opinion as follows:
"If a judge may create such an office when, in his opinion, the volume of business requires, he may create another and another, until he himself would become first an administrator and ultimately but a rubber stamp, and his entire judicial function would become vested in his commissioners. Such a result is obviously diametrically opposed to the best interests of the judiciary and of the state."
This statement is based upon conjecture and speculation and not upon any facts that were before this Court.
It is true that the division of state court administration was established in our Court under the jurisdiction of the Chief Justice, Ind. Code 33-2.1-7-1, expressed in the majority opinion, as follows:
"Among the duties of the division are the collection and assimilation of information pertinent to deciding the need for additional courts. Pending the creation of additional courts, when required, the assignment of judges on a temporary basis has been provided for. This procedure is of but recent origin and has not yet come into fruition. A judge, who deems himself to be overburdened and unable to meet the judicial demands of his court should apply to this division for relief."
My concern is that the need is now, not some unpredictable time in the future, and that this Court should exercise its inherent power which carries with it the implied duty and obligation to provide for personnel (in this instance, a commissioner for each division) to aid the two divisions in expediting the administration of justice. I cannot agree that this would come "frightfully" close to creating new county courts.
It is true the respondents acknowledge the absence of specific statutory authority for the creation of two court commissioners other than "such other employees as are necessary * * * in I.C. 33-10-5.8-2." To me it would seem ludicrous to permit *223 them to hire maintenance personnel as the only inherent right embraced within that provision.
It is further perhaps true that the respondents do not have express authority in the statute for court commissioners, and while they may not have as a matter of their jurisdiction the inherent authority to command all things reasonably necessary for the administration of justice, it cannot be argued that this Court does not have the inherent power to mandate the Lake County Council to provide the two commissioners requested. Having the power and obligation to do so, we should mandate the respondents' request be granted.
I further agree that the Special Judge, The Honorable Jack A. King, was correct in finding that there was no specific statutory provision under which he could have found that the Lake County Council should be mandated to provide the two court commissioners. I would further affirm the judgment of the Special Judge in all other aspects of the budget, and his finding of the allowance of $176,149 for Division II and $173,493 for Division III, for the fiscal year commencing July 1, 1977.
I dissent with the majority for the reason that in my view we should have mandated the Lake County Council to provide the two court commissioners requested, and in my view the Special Judge's findings and conclusions should be modified by this Court to the extent that it would include the salaries of the two commissioners and additional staff members necessary to augment their respective duties.
NOTES
[1] 20 Am.Jur.2d Courts, § 79 n. 9 (1965); 21 C.J.S. Courts § 14 (1940); 7 Trial 22 Carrigan, Inherent Powers and Finances (1972); Noble County Council v. State ex rel. Fifer (1955), 234 Ind. 172, 125 N.E.2d 709; Board of Commissioners v. Stout (1893), 136 Ind. 53, 35 N.E. 683; State ex rel. Bailey v. Webb (1939), 215 Ind. 609, 21 N.E.2d 421; Carlson v. State ex rel. Stodola (1966), 247 Ind. 631, 220 N.E.2d 532; In re Appointment of Clerk of Court of Appeals (Ky. 1957), 297 S.W.2d 764; State ex rel. Kitzmeyer v. Davis (1902), 26 Nev. 373, 68 P. 689; State ex rel. Finley v. Pfeiffer (1955), 163 Ohio St. 149, 126 N.E.2d 57; Judges For The Third Judicial Circuit v. County of Wayne (1969), 383 Mich. 10, 172 N.W.2d 436, reh. 386 Mich. 1, 190 N.W.2d 228, 241; State ex rel. Weinstein v. St. Louis County (Mo. 1970), 451 S.W.2d 99; Smith v. Miller (1963), 153 Colo. 35, 384 P.2d 738; Commissioners Court of Lubbock County v. Martin (Tex.Civ.App. 1971), 471 S.W.2d 100; In re Janitor of Supreme Court (1874), 35 Wis. 410; In re Courtroom and Officers of 5th Branch Circuit Court, Milwaukee County (1912), 148 Wis. 109, 134 N.W. 490.