## Christ Dahnke v. The People of the State of Illinois.

1. COUNTY BOARD—*Control Over Court Rooms, etc.*—The control of the county board of Cook county over such of the court rooms in the court house as have been set apart for, and always used by, the Circuit and Superior Courts, does not extend so far as to permit said board to compulsorily require the judges of said courts to change and remove their courts from one room to another at the pleasure of the board.

2. SAME—*Its Powers.*—The county board of Cook county can exercise only such powers as are conferred upon it by the constitution and statutes of the State, or as arise by necessary implication from their express grant of powers. It possesses no common law powers.

3. SAME—*Manager of the Property of the County.*—The county board, under our system, is the constitutional and statutory manager of all the property of the county, including the court house and court rooms.

4. COUNTY BOARD AND SHERIFF.—It is the duty of the county board to provide court rooms and maintain them, and it is equally the duty of the sheriff to provide against the rooms which have been once set aside for the use of the courts, from being closed against such use, and protect them from intrusion to the obstruction of the court's business.

5. SAME—*Custody and Control of Court Houses.*—The custody and control which the county board is entitled to exercise under the authority of the constitution and statutes, is such as attaches to and flows from the ownership of the court house by the county; that of the sheriff is such as attaches to and flows from the inherent powers and duties of his office at common law, and as recognized by the constitution and declared by the statutes as the attendant upon the court and as the court's executive officer.

6. THE SHERIFF—*Enforcer of the Peace and Order.*—The sheriff is the common law, statutory and constitutional enforcer of the peace and order of the rooms in which the courts are held, and the preserver and protector of the dignity of the courts, as well as of the peace of the county. He is the officer through whom the courts act to enforce order and decorum in their presence and their processes in their absence.

7. SAME—*His Election and Powers at Common Law.*—The constitution provides for the election of a sheriff in each county, and his powers, being undefined and not limited by the constitution, unless by necessary implication, are left as they existed at common law.

8. SAME—*Subject to the Orders of the Court.*—The sheriff and his deputies are subject to the orders of the court in all matters pertaining to its business and the administration of justice in the county.

9. SAME—*A Constitutional Officer of the State.*—The sheriff of the county is, *eo nomine*, a constitutional officer of the state, and possesses

all the substantial powers appertaining to the office by common law. The legislature may impose upon him new duties, but it can not deprive him of his common law functions and devolve them upon the incumbents of other offices created by it.

10. SAME—*Powers at Common Law and by Statute.*—At common law the sheriff of the county was alone *custodiam comitatus,* and the common law being the law of this State, except when altered by the constitution or statutes, he has all the common law powers and duties pertaining to his office, except where he has been deprived of the same by the constitution or by constitutional statutes.

11. SAME—*A Continuation of the Office as it Existed at Common Law.*—The office of the sheriff, as it exists in this State, is a mere continuation of that office as it existed at common law, and his common law powers have never been limited by the constitution, or by constitutional statutes unless by implication arising from conflicting provisions.

12. COURT—*Independence of the Judiciary.*—It is of the first importance that the dignity and independence of the judiciary should be preserved and be free from all interference and obstruction by the legislative departments of the government, in all matters respecting the execution of judicial functions.

13. SAME—*Control over Court Rooms.*—It is a matter of prime consideration in the performance of its duties that the court have unquestioned freedom in the access to and control over the court rooms during its sessions and its necessary seasons of adjournment.

14. CONSTRUCTION OF STATUTES—*County Board and Sheriff.*—The different constitutional provisions and statutes creating and regulating the powers and duties of the county board and the sheriff of Cook county should be interpreted so as to harmonize their different provisions and give them all effect.

**Memorandum.**—Contempt of court. Appeal from a judgment of the Superior Court of Cook County; the Hon. HENRY W. FREEMAN, Judge, presiding. Heard in this court at the October term, 1894. Affirmed. Mr. Justice GARY, dissenting. Opinion filed March 5, 1895.

EDWARD J. JUDD, attorney for plaintiff in error.

S. P. SHOPE, attorney for defendants in error.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The plaintiff in error was an employe of the board of county commissioners of Cook county. As such, and acting under the directions of said county board, he did, between the hour of adjournment on the afternoon of Mon-

Dahnke v. The People.

day, November 5, 1894, of the branch of the Superior Court of Cook County, presided over by Judge Freeman, and the hour of ten o'clock in the morning of Wednesday, November 7, 1894, to which hour said court had been adjourned (election day intervening), change the locks on the doors to the court room and chambers occupied by said judge, in the county building known as the court house in said county, so that the said judge, and the sheriff and his bailiffs attending said court, were unable to gain access to said court room for the purpose of holding court, and hearing a cause then partly heard, and refused to permit the said judge, bailiffs and other officers of said court to enter said court room, and declared that the session of said court should not be held in said room.

For such interference with and obstruction of said court, the plaintiff in error was fined by Judge Freeman, sitting as a court, fifty dollars as and for a contempt of court. From the order fixing said fine this writ is prosecuted.   From answers to interrogatories propounded to plaintiff in error, it is made to appear, in addition to the foregoing, that said judge had occupied. the room in question as a court room from the opening of the courts of Cook county, after the summer vacation, on September 17, 1894.

It further appears that after the plaintiff in error refused to permit said Judge Freeman to enter said court room, the court bailiffs threatened to break into said room, and thereupon the plaintiff unlocked the door and allowed the bailiffs and judge to enter and occupy said room for court purposes as theretofore.

It also appears that in said court house certain rooms have, hitherto, and since the erection thereof, been set apart, designated, known and used as court rooms for the Circuit and Superior Courts of said Cook County, of which the court room in question is one; and that acting under a claim of lawful authority in that behalf, the county board, on October 15, 1894, ordered a certain assignment of three of said court rooms, one of which, the one in question, was then occupied by Judge Freeman, whereby Judge Freeman

was assigned to another court room usually occupied by
Judge Adams, until such time as Judge Adams should return
from a term of the Criminal Court then being held by him,
and assigning to a different judge the room so occupied by
Judge Freeman; that because of the resignation from office
of Judge McConnell, who had, previous to September 17,
1894, occupied the room in question, there was then no judge
of either the Circuit or Superior Courts who, by reason of
prior occupancy, had a superior claim to that of Judge Free-
man, to occupy said room either by right or courtesy; that
Judge Freeman refused to recognize such assignment of
rooms and refused to exchange the room in question then
occupied by him for the temporary use of Judge Adams'
court room; that thereupon the county board directed the
plaintiff in error, as custodian of the court house, to remove
the property of Judge Freeman from the room occupied by
him to Judge Adams' court room, and to turn over said
room in question to Judge Hanecy, and that the acts
charged as contempt, were committed in pursuance of such
order of assignment and directions of the county board.

There are twenty-three judges sitting in said courts, each
one of whom needs, in the performance of his duties as a
judge, a court room; and it is so generally known as to
entitle us to take notice, that there are not a sufficient num-
ber of court rooms in the court house to accommodate said
judges with separate court rooms, and as a consequence
there occur times when, to the detriment of the public
service, some one or more of said judges can not hold court
for lack of a place in which to hold its sessions. By law the
Superior and Circuit Courts of Cook County are co-equal in
dignity and jurisdiction; and it is as much the duty of
the county board to provide court rooms for one court as
for the other.

Upon these facts the question involved is, does the con-
trol of the county board over such of the court rooms in the
court house as have been set apart for and always used by
the Circuit and Superior Courts, extend so far as to permit
the said board to compulsorily require the judges of said

courts to change and remove their courts from one court room to another at the pleasure of the board ?

The county board can exercise only such powers as are conferred by the constitution and statutes of the State, or as arise by necessary implication from their express grant of powers. It possesses no common law powers. Cook County v. Gilbert, 146 Ill. 368.

Section 7, Art. 10, of the present constitution of 1870, provides :

" The county affairs of Cook county shall be managed by a board of commissioners of fifteen persons, ten of whom shall be elected from the city of Chicago, and five from towns outside of said city, in such a manner as may be provided by law."

In furtherance of this constitutional provision, the legislature of the State has enacted numerous laws, of which those that are applicable to the question before us, are as follows :

Sections 24, 25 and 26, Chap. 34, Rev. Stat., entitled, " Counties," provide that counties shall have power " to purchase and hold the real and personal estate necessary for the uses of the county," and " to sell and convey or lease " the same, and that the county boards of the several counties shall have power " to take and have care and custody of all the real and personal estate owned by the county; to manage the county funds and county business, except as otherwise specially provided."

And that it shall be the duty of the county board of each county " to erect or otherwise provide, when necessary, and the finances of the county will justify it, and keep in repair, a suitable court house, jail and other necessary county buildings, and to provide proper rooms and offices for the accommodation of the several courts of record of the county, and for the county board, county clerk, county treasurer, recorder, sheriff, and the clerks of said courts, and to provide suitable furniture therefor."

And, again, in paragraph 4 of section 63, same chapter,

concerning special provisions applicable to the board of com-
missioners of Cook county, it is provided :

"Said board of commissioners shall have the management
of the affairs of said Cook county in the manner provided
by law, and may exercise the same powers, perform the
same duties, and shall be subject to the same rules, regula-
tions and penalties prescribed by law for the board of super-
visors in other counties except as herein otherwise provided;
and shall be subject to the same rules, regulations and
restrictions herein provided."

We are aware of no other provisions, either constitutional
or statutory, that have application to the powers and duties
of the county board so far as the question here involved is
concerned; and in the absence of any other authority vested
in the courts, or other constitutional officer of the county,
either by the common law or by the constitution, or by con-
stitutional statutes, with reference to the care and custody
of the court room in question, we should experience but
little difficulty in holding that the provisions quoted, al-
though general in their terms, afforded a legal justification
for the acts of the plaintiff in error committed by the order
and direction of the county board.

By Section 14, Chap 125, Rev. Stat., entitled "Sheriffs,"
it is provided that the sheriff "shall have the custody and
care of the court house and jail of his county, except as is
otherwise provided."

This is but an adoption of the statute as it existed in
1845, and prior thereto. Rev. Stat. 1845, Chap. 99, Sec. 7;
Act concerning Sheriffs and Coroners, approved February
12, 1827.

And so did the statutes of 1845 provide :

"The county commissioners of said counties shall have
the care and custody of said court houses; any law or usage
to the contrary notwithstanding." Rev. Stat. 1845, Chap.
27, Sec. 38.

Except that the existing statute and the acts of 1827 and
1845, conferring the custody and care of court houses upon
the sheriff, are more specific in specifying court houses by

name, than the present statutes giving the custody, control and management, generally, of all the county property and affairs to the county board, although not more specific than the statutes of 1845 relating to the powers of county commissioners. The two statutes, relating, respectively, to the powers and duties of sheriffs and of county boards over court houses, have existed side by side, since, at least, 1845, and such dual custody has never before, so far as we know, been made a matter of judicial inquiry.

Common sense and a respectful regard for and attention to the mutual rights and duties of county boards on the one side, and of the courts and sheriffs on the other, have hitherto settled all disputes, if any have arisen.

It becomes our duty, however, the question being presented, to declare the lawful rights of the respective claimants to authority in the matter. If the authority exists in the sheriff, the plaintiff in error possessed no legal justification for executing the directions of the county board in the manner he did. The county board, under our system, is the constitutional manager, as it is the statutory one, of all the property of the county, including court rooms. · The sheriff, on the other hand, is the common law and constitutional enforcer, as he is the statutory one, of the peace and order of the rooms in which courts are held, and the preserver and protector of the dignity of the courts, as well as of the peace of the county. He is the officer through whom the courts act to enforce order and decorum in their presence, and their processes in their absence.

It is the duty of the county board to provide court rooms and maintain them, and it is equally the duty of the sheriff to provide against the court rooms which have once been set aside for the use of the courts, from being closed against such use, and from intrusion therein to the obstruction of the court's business. Such was his duty at common law, and such still remains his duty. There is nothing inconsistent in the performance of such duties by the sheriff with the other duty of the county board to control and manage the property of the county and its affairs, and there is

nothing necessarily antagonistic in the statutes that impose, in substantially the same language, the duty upon both county board and sheriff, to have the custody and control of the court rooms of the county. Assuming that the constitutional authority to the county board to manage "the county affairs of Cook county," is broad enough to make constitutional all the legislation to which we have referred in furtherance of that provision, does it necessarily follow that thereby all other constitutional and statutory provisions in apparent conflict therewith are subordinated thereto? We think not. The constitution just as plainly, in provisions hereinafter mentioned, provides for the election of a sheriff in each county, and his powers, being undefined and not limited by the constitution, unless by necessary implication, are left as they existed at common law; and statutes declaratory of a part of his powers as they were at common law, have been enacted.

If, therefore, such at first sight conflicting acts and constitutional provisions can be harmonized, it should be done, and we think may be done.

The custody and control which the county board is entitled to exercise under the authority of the constitution and statutes, is such as attaches to and flows from the ownership of the court house by the county; that of the sheriff is such as attaches to and flows from the inherent powers and duties of his office at common law, and as recognized by the constitution and declared by the statutes, as the attendant upon the court, and as the court's executive officer.

It is but a reasonable interpretation of the several statutes and of the constitution, to give them such effect. If by reasonable construction the several acts and constitutional provisions may be harmonized, they should all be given effect. Cook County v. Gilbert, *supra.* And to so interpret them is but to yield to them the effect which usage and contemporaneous construction has afforded from the earliest history of the State.

And it is but seemly and fit that it should be so. The sheriff and his deputies are subject to the orders of the court

in all matters pertaining to its business and the administration of justice in the county—a duty which does not at all devolve upon the county board.

It is of the first importance that the dignity and independence of the judiciary should be preserved, and the whole theory of our system of government requires that it should be free from all interference and obstruction by the legislative departments of the government; not independent from the duty of the legislative departments to support the courts and provide places for their being held, for such are constitutional duties, but independent in all matters respecting the execution of judicial functions; and a matter of prime consideration in the performance of those duties is unquestioned freedom in the access to and control over the court rooms during sessions of the court and its necessary seasons of adjournment.

At common law the sheriff of the county was alone *custodiam comitatus.* 1 Blackstone's Commentaries, Chap. 9; see also 2 Bouvier's Law Dict., title "Sheriff."

The common law being the law of this State except where altered by the constitution or statutes of the State, a sheriff has all the common law powers and duties pertaining to his office, except in such cases as he has been deprived thereof by the constitution or by constitutional statutes.

The constitution of 1818 (Art. III, Sec. 11) provided that there should be elected in each and every county of the State "one sheriff," who it was provided should "hold office for two years and be subject to removal and disqualification and such other rules and regulations as may be, from time to time, prescribed by law."

The constitution of 1848 (Art. VII, Sec. 7), provided that there should be elected "a sheriff who shall hold his office for the term of two years and until his successor shall have been elected and qualified; provided that no person shall be eligible to the said office more than once in four years."

The constitution of 1870 (Art. X, Sec. 8), provides for the election of a sheriff in each county to hold office for four years, and until the election of his successor.

The sheriff is, therefore, and has always been, *eo nomine*, a constitutional officer of the State.

It will be observed that neither the present constitution nor either of the previous ones, has attempted to define the duties and powers of a sheriff. It was only in the constitution of 1818 that it was provided that sheriffs should be subject to such "rules and regulations" as might be prescribed by law.

Neither the constitution of 1848 nor the present one has placed even that limitation upon his common law powers. The statutory provision concerning sheriffs, hereinbefore quoted, is but declaratory of a part of the common law powers already possessed by sheriffs.

The office of sheriff is one of high antiquity and known to the common law from the earliest periods.

In Murfree on Sheriffs, Sec. 42, Chap. 2, it is said: "The very name and office of sheriff, implies the possession by that functionary of all the powers, and the obligation to perform all the duties of a common law sheriff, except so far as those powers may have been modified by State constitutions or constitutional statutes."

And again in Sec. 41 of the same chapter that author says: "When the office of sheriff is a constitutional office in any State, recognized and designated *eo nomine*, by the constitution as a part of the machinery of the State government, the sheriff, *ex vi termini*, must possess in that State, all the substantial powers appertaining to office by common law. It is competent for the State legislature to impose upon him new duties growing out of public policy or convenience, but it can not strip him of his time honored and common law functions, and devolve them upon the incumbents of other offices created by legislative authority."

So, in New York, it was held that the constitution of that State declaring that the sheriff should be elected, must have intended an officer possessing the common law powers and duties of the custody of the jail and of the prisoners confined therein, and that a statute which transferred those powers and duties to the superintendent of the penitentiary was unconstitutional. People v. Keeler, 29 Hun 175. And to

the same effect are People v. Albertson, 55 N. Y. 50, and People v. Raymond, 37 N. Y. 428.

In State v. Brunst, 26 Wis. 412, it is said: "The office of sheriff, in a certain sense, is a constitutional office; that is, the constitution provides that sheriffs shall be chosen by the electors of the respective counties. * * *

"Now, it is quite true that the constitution nowhere defines what power, rights and duties shall attach or belong to the office of sheriff. But there can be no doubt that the framers of the constitution had reference to the office with those generally recognized legal duties and functions belonging to it in this country and in the territory, when the constitution was adopted," which, it is unnecessary to add, were those existing at common law. And it was accordingly held, that it was not competent for the legislature to take from the constitutional office of sheriff a part of those duties and functions.

We have, we think, fairly shown that the office of sheriff as constituted and existing under the constitution of Illinois, is a mere continuation of that office as it existed at common law, and that the powers vested by the common law in the holder of that office in this State have never been limited by constitution or by constitutional statute, unless by implication arising from conflicting provisions, so far as the single question presented by this record is concerned; and that there is no necessary inconsistency or conflict between the statutes and constitutional provisions referring, respectively, to sheriffs and the county board of Cook county.

We therefore conclude that the county board was acting outside its authority in directing the plaintiff in error to perform the acts, for the doing of which the judgment of fine was inflicted upon him, and accordingly affirm the judgment of the Superior Court. Affirmed.

MR. PRESIDING JUSTICE WATERMAN.

There are in this county five courts, for which it is the duty of the county board to provide suitable accommodations.

The county board might provide five separate buildings for the use of the courts. A number of years ago it did erect a building to be used as a jail and by the Criminal Court. For a time the County Court was held in such building.

We are not, in the present case, called upon to determine as to the right of the board of county commissioners to set apart a certain building or certain rooms in the court house for the use of the Superior Court, and thereby to exclude all other courts therefrom.

We have in this proceeding to deal with the situation existing when the alleged contempt was committed.

So far as appears, the county board had not provided certain rooms for the Superior Court and others for the Circuit Court; it had furnished an insufficient number of court rooms for the use of the Circuit and Superior Courts.

How those rooms should be divided among the respective judges of these courts, had been left for such judges to determine. The judges at great personal inconvenience and detriment to the public traveled from room to room in an endeavor to faithfully discharge their duties.

Under such circumstances the county board had no right to remove the court papers and effects of Judge Freeman from room 421 and close the same against him for the purpose of turning the same over to another judge.

The true relation of the county board to the Superior Court is to it as a whole; it is to provide for it accommodations suitable for the number of branches appertaining to such court, leaving to the judges of said court the arrangement of, by whom the rooms thus provided shall be occupied.

It is not for the county board to say that room number one shall be devoted to chancery business, or room number two to the hearing of condemnation cases, or to the use of any particular judges; those are matters which the judges of that court in the orderly discharge of the duties appertaining to their high office, should determine among themselves.

The county board has been, and is confronted by great difficulties; it is called upon to do that for which it has not sufficient funds. Out of such unfortunate condition the controversy presented in this cause has arisen. We have been called upon to determine as to the claims of public servants, each of whom has endeavored to faithfully discharge his duty.

MR. JUSTICE GARY, DISSENTING.

Sec. 26, Ch. 34, R. S., provides: "It shall be the duty of each county board of each county, first, to erect or otherwise provide, when necessary, and the finances of the county will justify it, and keep in repair, a suitable court house, jail and other necessary county buildings, and to provide proper rooms and offices for the accommodation of the several courts of record of the county and for the county board, county clerk, county treasurer, recorder, sheriff and clerks of said courts, and to provide suitable furniture therefor."

The duty "to provide proper rooms and offices for the accommodation of the several courts of record of the county," etc., necessarily requires that when rooms are provided, the county board shall in some manner designate and make known which room is for the Circuit Court, which for the County Court, which for county clerk, etc.

In La Salle a Probate Court is to be provided for, as in this county; and in this county a great multitude of Circuit and Superior Courts besides; for each judge holds a complete, entire court. Jones v. Allen, 70 Ill. 34 and later cases.

If those Circuit and Superior Courts were here, as is usual elsewhere, designated by numbers, the authority and duty of the county board to specify the room for a court known as Circuit No. 1, No. 2, etc., or Superior No. 1, No. 2, etc., would be more obvious. The same reasons which require the designation of the room for the County Court or for the Probate Court would apply to each and every separate court; and it is probable that some scheme for numbering

and designating will have to be devised to bring order out of confusion. But until that is done, or if not the thing to do, the duty of the board to designate what room it has provided for a court which is to be identified in some other way than Circuit or Superior No. —— remains, and when the designation is made, it is the duty of all who are to occupy rooms provided, to abide by that designation. It follows that a court occupying in opposition to such designation, is in the wrong, and that it is no contempt for an employe of the county, in obedience to the order of the board, to take possession of the room when that court has left it at night, though intending to return after an intervening holiday. In my judgment the plaintiff in error was guilty of no contempt and the judgment against him should be reversed.